UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| A.T., a minor, by and through his Guardian ad Litem L.T.,<br><br>Plaintiff,<br><br>v.<br><br>DRY CREEK JOINT ELEMENTARY SCHOOL DISTRICT; PLACER COUNTY OFFICE OF EDUCATION; PLACER COUNTY CHILDREN'S SYSTEM OF CARE; KD ASHTON; BECKY BRAVO; PETER BALDO; LIZ LEE; CINDY STONE; RENEE VERDUGO; MARY BOEHM; CHRISTY CARTER' WENDY DEVORE; DONNA KEARNS; LISA HEWITT; TAMMY PETERSON; STEPHANIE DILBECK; JEN ROGERS; VALERIE MILLER; DAVID MOUL; DEBBIE CANNON; JUDY BENNEY; REBECCA RATEKIN; CARLEY ROSE JACKSON; LAURI MCNALLY; SANDRA MORE; and DOES 1–30,<br><br>Defendants. | No. 2:16-cv-02925-MCE-DB<br><br>**MEMORANDUM AND ORDER** |

Plaintiff A.T., a minor represented by his guardian ad litem L.T., originally brought claims against Defendants Dry Creek Joint Elementary School District, Placer County Office of Education, Placer County Children System of Care, as well as several of their employees (the "Individual Defendants") based on alleged abuse he suffered while a

1

student at Secret Ravine School. Plaintiff's initial complaint was dismissed, with leave to amend granted only with regard to his first and second causes of action against the Individual Defendants under 42 U.S.C. § 1983. Plaintiff timely filed a First Amended Complaint ("FAC") against those Individual Defendants, and now before the Court are Defendants' Motions to Dismiss for Failure to State a Claim. ECF Nos. 72-73.[1] For the reasons that follow, those motions are GRANTED in part and DENIED in part.[2]

**BACKGROUND**[3]

In 2005, shortly after beginning kindergarten at Cobblestone Elementary School, which is located within the non-party Rocklin Unified School District, Plaintiff was referred for special education after being diagnosed with attention deficit hyperactivity disorder and bipolar disorder. Toward the end of the 2004–2005 school year, Rocklin Unified convened an individualized education program ("IEP") meeting to determine whether Plaintiff was eligible for special education and related services. The IEP determined that he was. After Plaintiff's behavior grew more and more inappropriate and after three more IEP meetings, Plaintiff was placed in a non-public school pending his admission to a program operated by Defendant PCOE. In February 2006, Plaintiff was eventually placed at Secret Ravine School, which is operated by the PCOE. By the end of the 2006–2007 school year, Plaintiff moved within the boundaries of Defendant Dry Creek Joint Elementary School District.

Placement at Secret Ravine also required another IEP meeting, in which Plaintiff's father signed a document authorizing "therapeutic containment." Therapeutic

---

[1] Employees of the Placer County Office of Education ("PCOE") have moved separately from employees of the Placer County Children System of Care ("CSOC"), but have also joined in CSOC's motion. See ECF Nos. 72-76.

[2] Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs. E.D. Cal. Local Rule 230.

[3] Unless otherwise noted, the allegations in this section are drawn from Plaintiff's FAC. ECF No. 69.

2

containment was defined as "placing the student on the floor and holding him until he has regained control." That document authorized such containment when "external controls are unsuccessful and a student's behavior is escalating to such a degree that there is a clear and present danger of bodily harm to self or other or property damage." It also states that it would be used "only when it is clear that any less restrictive interventions would prove ineffective in controlling the student" and that Plaintiff's parents would be notified of the use of any such restraint.

In August 2009, however, Plaintiff's parents requested his records and discovered that the school had repeatedly restrained and isolated Plaintiff without informing his parents. On November 19, 2010, Plaintiff's parents requested an administrative hearing before the Office of Administrative Hearings for the State of California ("OAH"), alleging that the Institutional Defendants denied Plaintiff a free appropriate public education under the Individuals with Disabilities Education Act. On March 28, 2011, OAH issued a Decision by Settlement, ordering the parties to implement a settlement agreement. On December 14, 2016, Plaintiff filed the instant action.

## STANDARD

On a motion to dismiss for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), all allegations of material fact must be accepted as true and construed in the light most favorable to the nonmoving party. Cahill v. Liberty Mut. Ins. Co., 80 F.3d 336, 337–38 (9th Cir. 1996). Rule 8(a)(2) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). A complaint attacked by a Rule 12(b)(6) motion to dismiss does not require detailed factual allegations. However, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic

3

recitation of the elements of a cause of action will not do." Id. (citation omitted).  A court is not required to accept as true a "legal conclusion couched as a factual allegation." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 555). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555 (citing 5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1216 (3d ed. 2004) (stating that the pleading must contain something more than "a statement of facts that merely creates a suspicion [of] a legally cognizable right of action")).

Furthermore, "Rule 8(a)(2) . . . requires a showing, rather than a blanket assertion, of entitlement to relief." Id. at 555 n.3 (citation omitted).  Thus, "[w]ithout some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirements of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." Id. (citing Wright & Miller, supra, at 94–95).  A pleading must contain "only enough facts to state a claim to relief that is plausible on its face." Id. at 570.  If the "plaintiffs . . . have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." Id.  However, "[a] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and 'that a recovery is very remote and unlikely.'" Id. at 556 (quoting Scheuer v. Rhodes, 416 U.S. 232, 236 (1974)).

A court granting a motion to dismiss a complaint must then decide whether to grant leave to amend.  Leave to amend should be "freely given" where there is no "undue delay, bad faith or dilatory motive on the part of the movant, . . . undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment . . . ." Foman v. Davis, 371 U.S. 178, 182 (1962); Eminence Capital, LLC v. Aspeon, Inc., 316 F.3d 1048, 1052 (9th Cir. 2003) (listing the Foman factors as those to be considered when deciding whether to grant leave to amend).  Not all of these factors merit equal weight.  Rather, "the consideration of prejudice to the opposing party . . . carries the greatest weight." Id. (citing DCD Programs, Ltd. v. Leighton, 833 F.2d 183,

185 (9th Cir. 1987)). Dismissal without leave to amend is proper only if it is clear that "the complaint could not be saved by any amendment." Intri-Plex Techs. v. Crest Grp., Inc., 499 F.3d 1048, 1056 (9th Cir. 2007) (citing In re Daou Sys., Inc., 411 F.3d 1006, 1013 (9th Cir. 2005); Ascon Props., Inc. v. Mobil Oil Co., 866 F.2d 1149, 1160 (9th Cir. 1989) ("Leave need not be granted where the amendment of the complaint . . . constitutes an exercise in futility . . . .")).

**ANALYSIS**

**A. First Claim Against the Individual Defendants Under § 1983: Denial of Civil Rights**

Plaintiff's first cause of action asserts that Defendants violated his Fourth Amendment rights by subjecting him to unreasonable force and seizure, and by being deliberately indifferent to the harm it would cause. Plaintiff's original complaint was dismissed because—while Plaintiff adequately pled acts that supported a constitutional violation, he failed to plead specifically who took part in which acts. The Court agreed with Defendants that "allegations that make it 'likely two or more of the individual, non-supervisory Defendants were involved,' Pl.'s Opp'n to MTDs, at 14, are insufficient." Order, ECF No. 65, at 6. Though the Court agreed with Plaintiff that "'[t]here is no need to allege 'who did what and when' 112 individual times,' Pl.' Opp'n to MTDs, at 14, [Plaintiff] must show that it is plausible that each of the Individual Defendants violated his constitutional rights. He cannot simply plead facts that make it likely that 'at least one' did." Order, at 6-7. Plaintiff's claims against the Individual Defendants were thus dismissed with leave to amend. Plaintiff has now filed an amended complaint, ECF No. 69, that cures these deficiencies. Indeed, Plaintiff's FAC goes to great lengths to allege each incident of restraint or containment, the date, length of time, and who was involved. See, e.g., FAC at ¶¶ 56-101.

///

5

Defendants now move to dismiss Plaintiff's First Claim arguing that Plaintiff has failed to "allege governmental conduct actuated by an investigative or administrative purpose; rather, Plaintiff asserts the use of behavioral interventions." CSOC Mot., ECF No. 72, at 1. More specifically, Defendants assert that a non-law enforcement governmental party is only subject to the Fourth Amendment's prohibition of unreasonable search and seizure where that party intends to assist the government in an investigative or administrative function. CSOC Mot. at 5. Because Defendants here were performing their jobs as school employees and not assisting the government in a search or seizure, the Fourth Amendment does not apply to them. This is simply not an accurate statement of the law—something Defendants seem to concede in their Reply. As Plaintiff points out in his Opposition, both the Ninth Circuit and this Court have recognized that a Fourth Amendment analysis governs a teacher's seizure of a student and applies in this very context. See, e.g., Doe v. Hawaii Dept. of Educ., 334 F.3d. 906, 908-09 (9th Cir. 2003); W.A. v. Patterson Joint Unified School Dist., No. CV F 10-1317 LJO SMS, 2011 WL 2925393 (E.D. Cal. 2011).

Defendants secondarily argue that the seizures at issue here were not "unreasonable" in any event, given the "very real dangers presented by Plaintiff's behavior." CSOC Mot. at 6. But Plaintiff's FAC alleges a minimum of one hundred twelve instances of restraint and containment, and 2,719 minutes of isolation over the course of three years. Although the method of restraint Defendants allegedly used was in accordance with school policy, as alleged, the Court nonetheless cannot determine that every instance of restraint or containment was reasonable and/or justified by Plaintiff's behavior. Indeed, Plaintiff sufficiently alleges otherwise and Defendants cannot and do not argue to the contrary in their Reply. For those reasons, Defendants' Motions to Dismiss the First Cause of Action for failure to state a claim are DENIED.

///

///

///

**B.     Second Claim Against Individual Defendants Under § 1983: State Created Danger**

Defendants next move to dismiss Plaintiff's Second Claim—a substantive due process claim brought under the Fourteenth Amendment for state created danger[4]—on the basis that Plaintiff's only allegations are that the state actors themselves, and not third parties, are responsible for the alleged restraint and confinement. CSOC Mot. at 1. It is true that the government has no duty to protect citizens from the acts of third parties. The state created danger doctrine is an exception to this general rule, providing that the government may be liable where (1) "there is affirmative conduct on the part of the state in placing the plaintiff in danger" and (2) "the state acts with deliberate indifference to a known or obvious danger." Patel v. Kent Sch. Dist., 648 F.3d 965, 974 (9th Cir. 2011) (internal citations omitted). Put differently, "[u]nder the state-created danger doctrine, a state actor can be held liable for failing to protect a person's interest in his personal security or bodily integrity when the state actor affirmatively and with deliberate indifference placed that person in danger. The doctrine holds state actors liable 'for their roles in creating or exposing individuals to danger they otherwise would not have faced.'" Pauluk v. Savage, 836 F.3d 1117, 1122 (9th Cir. 2016), quoting Kennedy v. City of Ridgefield, 439 F.3d 1055, 1062 (9th Cir. 2006).

As an initial matter, according to Defendants, "case law is clear that in order to properly assert a cause of action for State Created Danger pursuant to the Due Process Clause of the Fourteenth Amendment, a third party, not the state actor, must inflict the subject harm." CSOC Mot. at 6. Plaintiff concedes that "the state created danger doctrine is most applied to danger posed by third parties," but argues—without citation to authority—that the doctrine can and does apply outside of that context. Opp. at 7. Neither party has cited to any caselaw—and the Court has found none—explicitly

---
[4] There are two ways to establish governmental liability under the Fourteenth Amendment for harm resulting from otherwise lawful governmental conduct: (1) the special relationship exception; and (2) state created danger. Plaintiff's Opposition seems to conflate these two exceptions. Opp., at 7-8. Because he only explicitly asserts the latter in his FAC, however, the Court addresses only the latter here.

7

confirming or rejecting Plaintiff's position.[5] As Defendants acknowledge, however, there was no harm from a third party individual in Munger v. City of Glasgow Police Dept., 227 F.3d 1082, 1086-87 (9th Cir. 2000). Instead, there, the Court found police placed the plaintiff in "a more dangerous position than the one in which they found them" when they removed the intoxicated plaintiff from a bar and left him on the street in freezing temperatures. While no third party harmed the plaintiff, he ultimately died of hypothermia. Similarly, here, Plaintiff argues not only that Defendants themselves violated his constitutional rights (first claim), but also that they placed him in a worse position than he would have otherwise faced absent their actions, and that caused him harm.

Cases from other jurisdictions have also upheld applicability of the state created danger doctrine where the harm suffered was caused by the plaintiff himself, even where there was no custodial or otherwise special relationship between the state and the plaintiff. See, e.g., Sloan v. Kanawha Cnty Sheriff Dept., 342 F. Supp. 2d 545 (motion to dismiss state created danger claim denied where minor committed suicide after intensive interrogation); Armijo v. Wagon Mound Public Sch., 159 F.3d 1253 (10th Cir. 1998) (reasonable jury could conclude state defendants were liable for student's self-inflicted death under state created danger doctrine); Henderson v. City of Philadelphia, No. CIV. A. 98-3861, 1999 WL 482305 (E.D. Pa. 1999) (considering but rejecting state created danger theory after incapacitated man jumped from window because officers in no way "placed the plaintiff in a dangerous position that was foreseeable"). Based on a survey of cases applying this doctrine, then, it appears the relevant inquiries are those expressed in Patel—specifically, whether the state took affirmative action that placed

---

[5] The Court acknowledges Defendants' citation to Henry A. v. Willden, 378 F.3d 991, 1002 (9th Cir. 2012) ("By its very nature, the doctrine only applies in situations where the plaintiff was directly harmed by a third party"), but finds the language quoted not applicable to the present circumstances. There, the panel was simply reversing the district court's ruling that a state official must do more than simply expose a plaintiff to a danger that already existed by explaining that the doctrine explicitly provides relief to plaintiffs exposed to dangers that "already existed" (i.e., third parties). Henry A. does not specifically foreclose recovery to a plaintiff exposed to self-harm where the state engaged in affirmative conduct that exposed the plaintiff to a danger he otherwise would not have faced.

Plaintiff in danger, and whether the state acted with deliberate indifference to a known or obvious danger—and not whether the harm arose from a third party as opposed to Plaintiff himself or another outside condition.

Considering, then, the elements of a state created danger claim, Plaintiff asserts that the affirmative conduct here is undisputed: state employees "place[d] A.T. in a place where he would cause himself harm through isolation and feelings of abandonment and powerlessness." Opp. at 8. Defendants do not dispute this point, and both parties turn their focus to the issue of whether Plaintiff has adequately alleged deliberate indifference to a known or obvious danger. Indeed, the Court agrees that Plaintiff has adequately alleged that state officials took affirmative actions that placed A.T. in a position causing him harm that he otherwise would not have faced.

As restated by Defendants, "according to Plaintiff, the Defendants failed to notify Plaintiff's parents of the use of emergency interventions; failed to prepare and forward behavioral emergency reports to a designated administrator for review; and failed to convene an IEP meeting after each intervention to review the emergency report and determined the necessity of functional analysis assessment. FAC ¶¶ 109-125." PCOE Mot. at 4. Nonetheless, Defendants argue that Plaintiff has failed to allege deliberate indifference to a known danger because Plaintiff concedes that (1) A.T.'s parent consented to the use of physical restraints and containment, and (2) A.T. engaged in inappropriate behaviors, poor social interactions, and physical aggression, which behavior escalated while at Secret Ravine.

Plaintiff also alleges, however, that they were not informed of each use of restraint or containment of A.T., as required under the school's guidelines to which they consented, and that A.T.'s behaviors declined over his time at Secret Ravine. Despite the ineffectiveness (or the allegedly negative effects) of therapeutic containment, Plaintiff alleges that Defendants continued with that course of treatment without ever reevaluating it and without informing the parents. The sheer frequency with which these methods were used coupled with the fact that—as alleged—Defendants must have

9

known the method was ineffective and yet continued to engage in the same frequent acts, is sufficient to allege deliberate indifference to a known or obvious danger. Defendants' Motions to Dismiss are therefore DENIED as to the second cause of action on these grounds.

### C. Qualified Immunity

Lastly, Defendants assert they are entitled to qualified immunity. "Governmental officials performing discretionary functions generally are shielded from liability in their individual capacities if the challenged conduct did not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Romo v. Cate, Case No. 2:11-cv-2898 DAD P, 2014 WL 4276071, at *6. Taking the facts alleged as true at this stage of the litigation, Plaintiff has adequately alleged a constitutional violation under both claims, as discussed above. The Court therefore must assess whether the right was clearly established. This is "a two-part inquiry: (1) Was the law governing the state official's conduct clearly established? (2) Under that law could a reasonable state official have believed his conduct was lawful?" Jeffers v. Gomez, 267 F.3d 895, 910 (9th Cir. 2001) (internal citation omitted). At bottom, "the relevant, dispositive inquiry is whether it would be clear to a reasonable official that his conduct was unlawful in the situation he confronted." Saucier, 533 U.S. at 202.

Defendants assert that the alleged use of restraints "were specifically authorized by the parents, in accordance with State Law, in effect at the time the alleged events occurred and as such no constitutional violation occurred." CSOC Reply at 4. Moreover, they argue that even if the conduct was unlawful it would not be clear to a reasonable official that the conduct alleged in the FAC was a violation of A.T.'s constitutional rights because A.T.'s parents consented to the school's explicit policies. Importantly, Defendants point out that even conceding that they violated state laws by not informing the parents of every use of restraint, by failing to prepare behavioral emergency reports, failure to hold IEP meetings, and/or failure to conduct functional analysis assessment reports, public officials do not lose entitlement to qualified immunity

by violating a statutory or administrative provision. PCOE Reply at 4. This is because those violations do not necessarily bear upon the claims of constitutional rights asserted by the plaintiff. Id.

It is true that A.T.'s father consented to use of restraint per Secret Ravine's policies. It is also true that those policies were in accordance with state law and were not per se unconstitutional. Moreover, Defendants accurately state the law that not all statutory or administrative violations necessarily render them ineligible for immunity. But the Court is nonetheless not convinced that Defendants are entitled to qualified immunity under the facts alleged in this case. Entitlement to qualified immunity is a fact-intensive, case-specific inquiry. Here, Plaintiff has alleged a minimum of one hundred twelve instances of restraint and containment, and 2,719 minutes of isolation over the course of three years. At the most basic level, then, Plaintiff's allegations are not necessarily that every individual instance of restraint or containment was unconstitutional but that the totality of the number of such uses of therapeutic containment coupled with Defendants' failure to inform the parents of what they were doing, as well as their failure to prepare behavioral emergency reports, failure to hold IEP meetings, and/or failure to conduct functional analysis assessment reports has resulted in a violation of A.T.'s right to be free from unwarranted or unreasonable seizure at school. That right was clearly established at the time of the alleged violations. See, e.g., Doe, 334 F.3d 1298, 1301 (9th Cir. 2003).

For the same reasons, the Court finds that a reasonable official under these circumstances could not have believed his alleged actions were constitutional. Despite the fact that Defendants were acting in accordance with school policy and had parent consent for the use of therapeutic containment, as explained above, based on the facts as alleged in this particular case the Court does not find that a reasonable official could have believed his actions to be lawful. Defendants' claim of qualified immunity is therefore DENIED with respect to the first cause of action.

With regard to Plaintiff's state created danger claim, however, Defendants are

entitled to qualified immunity. Based on the analysis of the state created danger doctrine provided above, it cannot be said that it was clearly established at the time of the events alleged that school officials could be held liable under the state created danger doctrine for affirmatively and with deliberate indifference placing a student in a danger he would not have otherwise faced. For that reason, Defendants are entitled to qualified immunity on the second cause of action and their Motions to Dismiss are therefore GRANTED with respect to that claim. Because amendment would be futile, leave to amend the second cause of action is DENIED.

## CONCLUSION

For the reasons set forth above, Defendants' Motions to Dismiss, ECF Nos. 72-73, are GRANTED without leave to amend with respect to their claim of qualified immunity for the second cause of action, and DENIED with respect to the first cause of action.

IT IS SO ORDERED.

Dated: June 19, 2018

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE